May be seated. Afternoon ladies and gentlemen. This is the time set for the hearing on Bach in the case of Ibrahim v. US Dept. of Homeland Security. May proceed. Thank you, Your Honor. Good afternoon, Your Honors. Marwa Elzenkhali from McManus Faulkner, appearing on behalf of plaintiff, appellant and petitioner Rahinah Ibrahim. I just want to start off by saying that this case, the underlying case, was not the case about national security. This was never a case about national security. This was a case about district courts' power and authority to review executive action. It was a case about the government's stubborn resistance to allow the court to do that and its persistence in defending a case that was indefensible, trying to get it dismissed repeatedly, trying to hide it from the public so it can avoid judicial review. It was a case about the government trying to deny our clients access to justice. Now I want to quote to you a quote from the U.S. Supreme Court's case, U.S. v. Brown, where the court quotes from James Madison when talking about separation of powers, where he says, We see this as being a case about the separation of powers. And what happens here, the government defends a case where it blacklisted an admittedly innocent woman, refused for years to acknowledge her innocence, attempted to get this case dismissed repeatedly and hide it from the public and prevent the court from reviewing her matter. This was the very definition of tyranny. Now, the whole purpose of the Equal Access to Justice Act is so that lawyers can bring these kinds of cases before this court and other courts. Because judicial review does not happen unless lawyers can do that. And so we brought this case before the district court. Dr. Ibrahim, who is an astounding human being, I won't read or state everything about her that we've already talked about in our brief, but she's really an exceptional person. And she came to us at a time when she was arrested at San Francisco Airport, placed in a holding cell, and then told that she was placed on the government's no-fly list. We knew that this was going to be a difficult case. She came to us at a time where these cases were very uncertain. A lot of these cases were getting dismissed. The law was uncertain, and we were going to be going up against a government that has unlimited resources. But we took her case because we knew that it was the right thing to do, because she had been wronged, and because she had really no one else to turn to to vindicate her constitutional rights. We filed her complaint in 2006. The government, knowing that Dr. Ibrahim was not a threat to this country and had no connection to terrorism and should not have been placed on any government watch list, proceeded to vigorously defend this case for eight years. The government did anything and everything it can to avoid judicial review of its watch-listing system and to hide its conduct from the public. In January 2014, after years of persistence and hard work by the lawyers at McManus Faulkner, the government finally admitted what it knew all along, which is that Dr. Ibrahim was not a threat and has never been a threat to national security and should not be on any government watch list. At what point did the government know this, and what's in the record to tell us that the government knew that her designation as someone on the no-fly list was a mistake? It's in the district court's findings post-trial. The district court found that, based on documents that the government itself produced, that as of 2005, the government had no derogatory information about Dr. Ibrahim. As early as 2006, shortly after we filed our complaint, the government had a document by an FBI agent that requested that she be removed from all government watch lists because she had no nexus to terrorism, and that she be removed from all government watch lists, including the no-fly and selectee list. Are you talking about ER 453 to answer the question, where it starts with, at long last, the government has conceded? Is that the first time the court made that finding? In its final decision after trial, yes. So that's your response to Judge Faulkner's question? I'm just trying to understand. In the district court's findings, and I could pull the exact citation for you if you'll just give me a minute. This is at 443 and 445 to 446. That's fine. I mean, has the government – are you overstating their concession that – I'm just trying to, from this standpoint, they have obviously conceded that she was negligently put on the list, the no-fly list. Have they conceded that she cannot be or that there is nothing to put her on any of the many other lists? The government conceded that she is not a threat to national security and that she does not meet the government's reasonable suspicion standard to placing her in the terrorist screening database. Now, the government did place her in the CSDB in 2009 after she applied for a visa, and the court addresses this in its findings in order after the trial. But the court was very careful to say that she did not pose a threat to national security, that she was placed in that list, and specifically the government's CLAS and to ECS list, which is – Well, the court said that, but what I'm asking you is that you said the government has conceded that she doesn't belong on any – It has, and the court said that and actually repeated it about nine times in the court's findings in order after trial. If I might, I'd like to kind of change the questioning just a little bit. Sure. It seems to me that one of the first things we've got to talk about is substantially justified, so I appreciate where you're going on the facts, but I guess it was my understanding that what the district court did is the district court went through each one of the different theories here and determined that in some instances the government was justified and in some instances they were not justified. And so because of that determination, some of the fees were not acceptable and some weren't. As I understand it, your argument is that in light of Gene, that the government might have been able – or that the district court might have been able to look at these different positions, but after everything was done, they should have made one determination about whether the government was substantially justified or not. Is that your position? That's correct. Okay. If that's your position, then my question is this. Should then I send this back to the district court to make a determination in light of Gene, in light of the fact that now we would put out an opinion that says you've got to make one determination on substantial justification. You can go about it the way you want to, but you've got to make one. And it's an abuse of discretion decision anyway, Judge. So send it back and let that judge then, based on Gene and based on our decision, then make a decision as to whether the government was substantially justified or not? So the district court actually made a decision in its decision on our attorney's fees motion, initially saying that the government was not substantially justified in both its pre-litigation and post-litigation context. I understand, but that was part of my question. Correct. It was my understanding that the district court determined that the government was justified on one hand and wasn't justified in others. But if, in fact, the government has to really make their case and the district court's got to make that determination, the district court very well could determine upon remand that, okay, you've got these cases going, this particular issue going this way, this one this way, we need to make a determination again. And I'm trying to decide if that is something I can do as a matter of law or whether I need to send it back for a determination by the district court. Well, I think what the court can do is say that the district court already made a decision that the government was not substantially justified. But the district court didn't make a determination as to every issue. The district court made a determination as to some issues that the government wasn't justified, but others, they said, they were justified. So at that point, it seems to me, the only thing I can do with it is send it back and have the district court make one determination based on gene. Would you agree? Well, I would agree that what the district court should have done is just issued one single substantial justification decision and not picked apart the case and said, well, there's such and such and such. Isn't that risky for you? I mean, isn't it possible that the district court could then go back and say, okay, if I have to make one decision, I'm going to find that the government was substantially justified. And if that were the case, then aren't you at zero? Well, one of the things I was asking this court to do is to not send it back to the district court. I guess that was why I asked you the question. I don't know how I can make that decision. It's an abuse of discretion decision by the district court. It's one they have to make in the first place. And, therefore, it would seem to me that I've at least got to give them that shot, even if I agree with Gene. But I think this court can say that it was an abuse of discretion for the district court to make separate substantial justification decisions. And we're going to decide that issue? How come we have the authority to make that issue? Isn't that the district court's decision? Well, but the district court abused its discretion and made the wrong decision. But there are a set of other issues with the attorney's decision of the district court, because after it got substantially justified, then he went to the Hensley analysis. And on that, he seems to have found that you have washed down the First Amendment and equal protection claims in particular and required that you separate those out. I presume even if we were to remand the district court on the substantially justified, we would still reach the second question, because otherwise we would just get it back. Is that right? I'm sorry. In other words, suppose we decided that we are going to remand on the substantially justified with guidance. We would still reach the second set of questions, would we not, on the Hensley issue? Well, yeah. Once you make a substantial justification decision and find that they were not substantially justified in the litigation and proceeding with this, defending this litigation, then the question becomes, what are a reasonable attorney's fees under Hensley? Now, the district court and the panel originally in this court found that our various claims, that we did not win on all of our claims and that our various claims were not related. Under Hensley, the court can only cut your fees if you did not win on all of your claims and if your claims that you did not win on were not related to the claims that you prevailed on. And then there's another likelihood of success or degree of success, you know, overlay, which he never got to here, as I understand. There's also, right, whether or not you obtained excellent results. So in Hensley, the court says that you're entitled to a full compensatory fee if you obtained excellent results for your client. So what mistake do you think was made here in that regard? So there are multiple mistakes here. First of all, the court said that we did not prevail on all of our claims. But the court in Hensley says that you can make alternative legal claims, and the fact that the court does not get to those claims is not a basis for cutting your fees. You don't have to prevail on all your claims, right? To go back to Judge Berzon's question, you don't have to prevail on them. The question is if you failed to prevail on some claims that are unrelated. Right. Right? But the initial question is did you prevail on all of your claims? And the district court was completely clear about the fact that you did not lose on those claims. I'm sorry? The district court was completely clear on the fact that you did not lose on those claims. He said it over again. Correct. You just didn't prevail, but you didn't lose. And he said at one point, so go ahead. But once he decides that you did not prevail on all of it, once the court says – see, the district court says you didn't lose, but you did not prevail. But that's not a basis for cutting our fee, right? But just a minute. In order to really get all of your fees for your successful claims and for the unsuccessful claims that are related, the district court has to find that there was total success here. And the district court didn't find there was total success here. The district court found limited success here. And the district court found that by comparing what you had filed in the original action as well as what you filed on the second amended complaint and as well as what you went forth for after remand, that it was totally different and therefore said you didn't succeed on the whole, but you did succeed and you didn't lose all and therefore applied the intermediate. Isn't that what the district court did? Well, what the district court did is it said you didn't prevail on all of your claims and your claims were not related because one was an equal protection claim and a First Amendment claim based on discrimination and the other was a due process claim. But before they got to that, what the district court did is they looked at what you did in the original action, they looked at what you did in the second amended complaint, they looked at what you did when it was remanded and saw how different the claims were. And at that point, if I might, they determined that you weren't totally successful and then tried to apply the law as if you weren't totally successful. Isn't that what they did? That's what the court did. And if it's an abuse of discretion, what case would suggest that this idea on success is totally an abuse? Well, I think if you look at, for example, Webb v. Sloan, the facts of that case are very similar to our case where the defendant was arrested and the multiple claims that he brought based on that arrest were all considered related even though... Go ahead. I'm sorry. I don't want to... Where did he find that you, where did he do the degree of success analysis? I thought he only did the related, he did the substantial justification, he did the related case. Where did he do the degree of success? Is the analysis that Judge Smith just outlined in the district court opinion or is it only in the panel opinion in this court? The district court, well, I don't, he didn't do an extensive analysis of our degree of success. He relied primarily on his opinion that our claims, that we did not prevail in all of our claims and that our claims were unrelated. I think the degree of success arguments were primarily raised by the government. Is there somewhere in this opinion, and I'm missing, a comparison of the various complaints and whether you thought... There isn't. Your Honor, there is not. Actually, if you look at our second amended complaint... You disagree that there was. Is there or isn't there? Judge Smith is giving a whole analysis of what's in here and I can't find it in here. Is it in here? The court does not talk about what's in our second amended complaint. If the court didn't talk about it, isn't that another thing that we need to remand? About what's in our second amended complaint? Oh, about whether you were really successful or not because it's an abuse of discretion review. Now, what I took you through is what I, and evidently Judge, my good colleague, Judge Berzon, doesn't necessarily agree with me as to what the district court did. But if, in fact, the district court didn't go through that successful analysis, then I have to remand to give them the first right at it, don't I, because it's an abuse of discretion decision? Well, the district court decided that we were not... It does go through the analysis, it just doesn't go through it the same way that Your Honor suggested it should have. Well, frankly, what it got to was the second part, which is the Hensley analysis, where they're talking about successful claim against related claim and all of that. That's what you want to get to now, but I'm just suggesting that the first, if you will, analysis the district court should have made, and I frankly believe that you can find it in the opinion, but Judge Berzon may be right. You can't. It seems to me if you can't, then all I can do is remand and have the district court make that analysis. But the district court did make that analysis. It's just abuse of discretion in doing so, and I think there's plenty in the record for this court to decide. I know that I'm confused. I thought he'd never... My understanding of the structure is you do substantial vestibule right, and you do the first stage of Hensley. That is, you determine whether there are unrelated claims, and you back them out. Your argument is that the claims that you are arguing for were not unrelated claims. Right. The equal protection in First Amendment in particular. Correct. And we haven't heard that argument, so I think you should make it after we finish that. And then you get to the... Then if there are no unrelated claims, then you look at the total fee, and you say is the total fee justified by the degree of success or not. And he never really did the second, because he backed out so much of it at the beginning, both at the substantially justified stage and at the related stage, that there really wasn't a third stage, but it wouldn't be first, it would be last, but it would have to occur if he straightened out the rest of it, presumably. Yeah, correct, Your Honor. With respect to whether or not we prevail, whether or not our claims were related, the district court found that they were not related because they require two mutually exclusive sets of minds. He didn't say that. The panel said that. He didn't use the term mutually exclusive. That was the panel. Well, but he does say that how could she have been placed on the no-fly list by error and at the same time have been placed based on her religious or political background or what have you, which is essentially the same thing as what the panel also said. The problem with that argument is that the court intends, it says you can plead alternative legal theories, and that's what we did by... Isn't another fact-specific problem that the court here recognized that the error that was made in putting her in the no-fly list didn't preclude the fact that there could have been discrimination or a religious reason for looking at her in the first place, but he never got to that because it wouldn't have changed the relief. Well, the error that was made, however, was not in placing her in the terrorist screening database. It was placing her on the no-fly list rather than not instead of the selectee list, which is what he intended. So he intended to place her on the terrorist screening database. Regardless, he just placed her on one list instead of another. And the thing is, the bottom line of this entire case is about the placement of Dr. Ibrahim's name in the terrorist screening database. Can I right there just ask you a question that I've been trying for 20 minutes to ask? When we talk about, if you could just go take it up a notch because I don't think people are going to argue about you being prevailing party under the statute, and the next point is whether or not there was substantial justification for the government's position. And if there was, you don't get any fees, right? Okay. So on substantial justification, there's case law saying that we look at that as a whole, sort of a holistic analysis rather than issue by issue. My question is, at each stage of the litigation, it seemed to me that this case was about why she was on the no-fly list, whether she was correctly placed there. So my question is, has the government ever given justification for not telling your client that she'd been taken off the no-fly list? No. The government initially claimed that it was sensitive security information and refused initially to tell her whether or not she was on. They refused to confirm whether she had been taken off the list or she was kept on the list. This is important because, I don't mean to interrupt you, but the time is ticking, and that question, which seems to be pivotal in this case, is what the case was about, and it continued for the entirety of all three phases of litigation. In response to Judge Smith's questions a minute ago, you talked about the error of law that was made and abusive discretion at the substantial justification stage and entertained the notion that we should remand on that. But I'm struggling with why we would do that if the government has not offered justification for failing to tell her that they made the mistake and that she's off the list. Well, the government refused to tell us what her watch listing status is for years until we finally compelled it through discovery from the district court judge. Let me ask a version of the same question. You spend a fair amount of your time, in fact, you lead off in your brief with the argument that the government's litigation was in bad faith on the ground that the government knew from the outset that this was a mistake. Correct. If we were to conclude, because the government knew from the outset that this was a mistake and simply refused to correct the mistake, they didn't have to give any reasons why they'd made it, they'd just correct the mistake, what happens to the analysis of attorney's fees that are available? Do we have to go through it, then, cause of action by cause of action? Do we need to sort of distinguish out the claims on which you prevailed and the claims on which you might not have prevailed, could not have prevailed on, or do we just look at was your litigation strategy reasonable and afford you fees accordingly? How do we do that? If the court finds that there is bad faith, then we get our market fees. Let me just go back and just give you very quickly, this entire litigation was almost entirely procedural. We started off arguing over jurisdiction. We went on fighting about standing, and that fight over standing went on for years, all the way through trial. All of our discovery was about her watch listing status and the government's watch listing system. Everything that we did, regardless of whether you decide that our claims, that we won on all of our claims or our claims were or were not related, almost everything that we did really had to be done to win on our procedural due process claim. Essentially, she got everything that she asked for in her second amended complaint. I think even if you find that we didn't win on all of our claims or our claims were not related, we still had to do everything that we did in this litigation. The only thing that the court cited, too, that was different with respect to her claims was the expert testimony of one expert jury in Sanar who presented a report about discrimination against Muslims post-9-11. That's the only thing that the courts found that was any different between the claims. Everything else had to be done to get even to the result that we ultimately got to. Okay, let me come back to my question, because I think you answered it, but I want to make sure. I'm trying to figure out what the standard is as to how we get award or do not award fees for all or part, assuming that we find bad faith litigation strategy on the part of the government from the outset because the government knew at the outset that this was a mistake and failed to correct it. Do we have to distinguish among the various causes of action upon which you prevailed, upon which you didn't prevail because the district court didn't reach it, and those on which were unrelated and maybe you could not have prevailed? Do we need to make those distinctions if we find bad faith? I don't think so, Your Honor, because the standard really has to do with the conduct of the litigation itself throughout the litigation. And once you make a determination that the government litigated the entire case in bad faith, I think we should get our attorneys. You're really getting down to it. Once you make a determination overturned too. Correct. I mean, to get where you want to go, you're asking, say, one justification. Right. I mean, so it has to be substantial. They have no substantial justification. Then you want the bad faith overturned. Correct. Then you want all the charges being related so essentially you can recover on all. Correct. I mean, the basic basis of our appeal and our petition to this court was that the district court made clear error in its findings on bad faith, that it abuses discretion in its substantial justification analysis and its findings under Hensley as far as what was a reasonable attorney's fees, and we're asking this court to overturn its decision on all those three. But that would still be subject to abuse of discretion standard. This is where Judge Berzon was inquiring. On Part 2 of Hensley, the judge could have agreed with all of what you've just said and still decided that there was room to trim your fees under Part 2 of Hensley. But what I'm saying is even if the court found that under Part 2 of Hensley that we didn't I'm sorry, you're talking about the excellent results. That hasn't been done, and it would be difficult for us to do that originally, wouldn't it? I'm sorry? That has not been done in the district court as such, as a separate thing. It's analysis of whether or not our results were limited. Well, the court talks about things like our initial complaint and certain things that got dismissed from our initial complaint. It basically says that the parts of its order that had to do with having to be informed that she can apply for a waiver were the court's own idea, not ours. Of course, the court would have never gotten to that had we not filed the case and proceeded with it all the way through to litigation. So I think the court does make that analysis, but it's in its own way, by picking apart other minor things that we didn't necessarily win on and saying that that limits our results. Let me see if I can understand how to encapsulate your position and make certain I do understand your position. Under Mendenhall, you understand the facts of that case. Our court found that when there's just no justification and the government continues to act as if there were justification, that's bad faith. And anything that's done thereafter, when you know perfectly well there's nothing wrong, is surplusage. If I understand your argument, because the government admitted that it had no case against your client, within roughly two weeks after you were filing the complaint, everything that has occurred since that time was unnecessary. Correct. And had it admitted that it had made a mistake, would not have been necessary. But under the circumstances, the result is the same, whether you have more or less causes of action. Is that correct? Is that your position? That is correct, Your Honor. This litigation didn't need to happen at all. Had they just acknowledged what happened, what they knew at the outset, and just taken her name off the list of responsible. And under Hensley, when we're talking about a core set of facts like that, if that's correct, do we really need to get into this parsing out of whether this part or that part or the other? If there's bad faith, and all these years of litigation was entirely unnecessary, why do we need to get into that? Well, the initial analysis is whether or not there's bad faith. Right. That's a totally separate analysis from substantial justification, because it's a much greater standard than substantial justification.  That's why I asked you about Mendenhall, because Mendenhall, of course, had a similar situation where the facts were actually less clear. And our court found that that was bad faith. And there's a number of cases that we cited, too, in our briefs, where the court finds much less things as being bad faith. What is the standard of review on bad faith? It's clear error. Okay. So if it's clear error, then it seems to me that before we decide whether it's bad faith or not, we have to kind of look at what the district court found. In the district court, when the district court first claims, the government placed her on the list and therefore acted in bad faith, and the defense of that position was bad faith. The district court said, well, when she was put on the list, there was no uniform standard for putting someone on the watch list at that time. The district court said there was no interest in putting them on there because of race, religion, or ethnicity. Sorry, that's an Idaho problem. But you didn't even challenge that. Defending the placement, the district court says prior to the suit, there was no court anywhere that suggested that the plaintiff had a right to challenge being placed on the list. At the time the suit was filed, your client was already off the list for more than a year and that the lists on which she was placed were the only ones that the nominator had requested that she be placed on. Now, I guess I looked at that and I said to myself, I don't find anything in this back situation that's clear error. And I disagree with that, Your Honor. What is the clear error? So clear error is if the court's decision is illogical, implausible, or without support and inferences that may be drawn from the facts in the record. First of all, if you compare the district court's decision post-trial with the district court's decision on attorney's fees, the district court completely changed course in its evaluation of what the government did throughout the course of litigation. So I'll give you one example. So you're just saying, I just want to make sure I'm understanding your argument. So you're saying the district court changed its position in the middle of the suit, so therefore what it found was a reasonable justification, if you will, and I'm not going back to the reasonable justification. I'm talking about bad faith. The reason there was not bad faith that the district court threw all that out? Well, the district court, what I'm saying is the district court's order on its attorney's fees and its findings there are not supported by its order, its judgment post-trial. Well, all I'm trying to do, I mean, I saw your first claims. I looked at your standing. I looked at your privilege assertion. I looked at the failure to train the agents and place the safeguards to catch and correct the errors. And then I looked at what the district court said about those and why the district court felt that there was no bad faith. And I guess me, being kind of a standard review guy, I said to myself, how can I say that's clear error? Go to the facts. Right. Well, if you give me an opportunity to give you even just one example, the district court, for example, said that this was not bad faith because the placement of her name on the no-fly list was an error. It was Kevin Kelly's mistake of filling out the form incorrectly. The problem with that and the reason why that's illogical and not supported by the record and therefore a clear error is he ignores the entire history of the case. Well, the question is not whether Kelly acted in bad faith. The question is whether the government litigated in bad faith in defending what Kelly did instead of just correcting the mistake. Right. Exactly. But the district court tries to say that, well, they litigated because they didn't know Kevin Kelly had made a mistake and he made a mistake and didn't find out about it. As I understand what they said, they litigated because they didn't know that they couldn't win on these procedural grounds, which may not be an answer. But essentially he said there was no law on the reviewability of this mistake. And once the second Ibrahim opinion came down, then that should have been the end of the case, correct? But it didn't end there. They continued to litigate the case. So after the second Ibrahim opinion, the court now had jurisdiction. This court had found that she had standing, and now they had the answer to those questions, and they should have ended it right there, but they didn't. They continued to litigate the case. The problem with saying that it's okay for the government to refuse to acknowledge that this woman has no connection to terrorism and continue to defend this case because they get to make certain procedural arguments is ignoring the fact that this is the U.S. government. They're a public entity, and they have an obligation to protect people's constitutional rights. And they had an obligation before this case was even filed and before we got to standing and jurisdiction under their own administrative process to review this matter and do what they had to do. Well, I gather that at some point they claimed to have corrected it internally, but not to tell her. And they sent her a response after she filed her complaint with essentially no answer at all. And they didn't really correct the quote-unquote error. What happened was when the district court found in its findings after judgment, they kept putting her off the list and taking her off the list numerous occasions over the years and never really confirmed, is she off or is she on? Plus they hadn't cleared out the various databases that she was now on. So they represented to the district court, and the district court says this in its order, that this issue has already been cleared, and the court says, well, if it's already been cleared, then you just need to confirm that. But then when they did confirm what had happened is they came back and they said, actually, we had to clear her name from almost 30 databases. Thank you, counsel. Your time is expiring. I apologize. I didn't ask for time for rebuttal. We'll give you a couple minutes. I appreciate that. Thank you. I forgot to acknowledge Judge Wynn when we came out today. Judge Wynn, can you hear us? I can. Thank you. Thank you for joining us. Thank you. May it please the court, my name is Joshua Waldman. I'm from the United States Department of Justice, representing the appellees of the Department of Homeland Security. Mr. Waldman, I hate to start right off with this, but I remember reading Franz Kafka's The Trial many years ago, and I was reminded of that book when I read this case. Would you just tell me in plain language, my understanding is that approximately two weeks after the complaint was initially filed, that processes were begun within the department in which it was admitted, this woman, there's no reasonable suspicion, she should not have been on any list. If that's correct, why didn't the department just say, you know, we're really sorry, we made a mistake? Your Honor, I think it's really important to ground your opinion in the factual findings of the district court of trial, and I want to correct a couple of what seem to be misperceptions about what the district court found at trial. Before we get to the district court, I want to know from you, why didn't your client simply say, hey, we made a mistake, we're sorry, we're going to take care of all this? Why go through all these years and years and years of litigation, some of which was justified if your position was there, but why didn't you just say, we're sorry? Well, a couple of reasons, Your Honor. One is, this case was about a lot more than the no-fly list. This was a case about the visa that was revoked and then later visa denials. Well, that came later. That came later. I mean, you did a lot of things after you didn't originally say, we're sorry. Right. Well, let me start at the beginning about why the government's policy was to not say that someone was on the no-fly list just whenever they asked. And before I do that, I just want to point out, that is not the government's policy now. In 2015, as we noted in our brief, unrelated to this litigation, the government changed its position for U.S. persons, meaning citizens and lawful permanent residents, if those people have trouble or are denied flying. Would that cover her? Would that cover her? I think under the Ibrahim Chu decision, it likely would, but we've never – But you just said citizens and LPR. She's neither. Well, it's defined as a U.S. person. I think there would be a question of whether the – She's a foreign national. That's what everyone says the whole time. Right. I'm not sure how she would be treated under the policy if this came up now, but I suspect for her in particular, because of this court's holding in the second Ibrahim appeal that she is entitled to a certain due process. The bottom line is right now. I'm sorry. I'm trying to get to that. I don't have an answer to Judge Smith's question. Let me get back to that question. Right now, if this petitioner, this appellant, has exactly the same situations but this year, would there be any question you just simply say, I'm really sorry, you shouldn't be on the list? I think it's – I don't know how TSA would treat her, whether she's a U.S. person or not. Put that aside. Put that aside? Put that aside. Is there any reason under current law why you wouldn't just say, hey, we're sorry? I think that would likely be the case, Your Honor, but that was not the policy at the time, and I want to explain why. What about the Mendenhall case? How does that fit into this? Well, I'm not sure what the facts of the Mendenhall case are, but let me just say, Your Honor, let me talk about – let me relate it to bad faith. First of all, this court in Rodriguez held that pre-litigation conduct cannot be the basis of a bad faith determination by itself. And – This is post litigation. She filed a complaint two weeks later. No, the mistake about the no filers took place pre-litigation. But that's not the question. The question is, the mistake was made. I'm willing to assume that the mistake was made in good faith. The question is, litigation strategy by the government in defending what it knew was a mistake. Right. Your Honor, I'd like to just get back to sort of correcting some misimpressions about the record, because I think they go – Counsel, why can't you just answer the question which has now been asked both by Judge Smith and by Judge W. Fletcher? You're not answering the question. Which question, Your Honor? The question is, apparently, that the government knew that she should not have been placed on the no-fly list, if not when the lawsuit was filed, but immediately around that time. And instead of saying, you're right, you don't belong on this list, the government ensued in the eight years litigation with two trips to our court and a trial and all sorts of other things that just ratcheted up the attorney's fees. And so – and now, you know, your opposing counsel has said none of this is necessary. Your Honor, I'm trying to answer that by saying she was taken off the no-fly list before this litigation even commenced. And put back on again. No, she was not put on again. Let me just read directly – let me read from the district court's factual finding, if I may. This is a direct quote. You can find it in volume two of the excerpts of record on page 457. Quote, Dr. Ibrahim is no longer on the no-fly list and has not been on it since 2005. Yes, but the court also called this Kafkaesque, to hearken back to Judge Smith's question, because I think he went right to what is so troublesome about this litigation. And it sounds like, when I read these findings and look at what the government has to say, is that she was off the list before she sued, so why didn't you tell her? Well, the reason the government didn't have that policy at the time was it had operational reasons for not telling people. For example, it didn't want people to be able to write in from all around the world and be able to ask, am I on the no-fly list? Sometimes people who are on the no-fly list, the government may have operational reasons for wanting that person to attempt to fly and then be able to track them after that attempt. You're turning it around. The question here is, the government has made a determination she's not on the list. She filed every form she thought she had to to get the answer. All you had to say is, you are not on the list. Am I on the list? No, you're not on the list. You didn't tell her. The government took, at that time, a position that's known as the Glomar position. If you're not familiar with the Glomar position, it's you neither confirm nor deny, because if you tell people when they're not, obviously you're disclosing whether they are when you refuse to answer. So the government had to take that position. It's no longer the position, but that was the government's position at the time. And at the time this litigation was going on. In other words, for eight years of litigation, we're defending that position, i.e., that we don't need to tell anybody when they're on or off the list. In part, yes. In part, we were defending many other things. For example, the plaintiffs sought to be removed not just from the no-fly list, but from every single government watch list in its entirety. And did the government realize then that she was on all of those lists by mistake? No, Your Honor. In fact, the district court specifically says, and this is on page 446 of the excerpt of the record, that she is and was at the time of the final judgment on three things. The TSDB was the centerpiece of this litigation seeking to be removed. Class and text. So three watch list databases, whatever you want to call them. As of the final judgment, she was on those lists. She sought removal from every single watch list. So part of what we were doing in defending is saying, the district court never found anything erroneous, let alone unlawful, about that. And we were saying, hey, you want removal from every list. You know, we made a mistake about the no-fly list, and we're defending that in good faith. But there's so many other things this litigation was about. Not just those lists, but the visa determination that the district court upheld. The discovery request. The seeking to take the witness testimony. Wait a minute. That only occurs because the lawsuit's going on. If you had stopped the lawsuit by giving her what she asked for, then all the rest of it wouldn't have happened. Right. Well, we don't know that, Your Honor. And I want to point out, for example, there's been cases under the new policy, the 2015 policy, in which we tell people whether they're on the no-fly list. And we have told people that they're not on the no-fly list or that they're removed from the no-fly list. And the suits continue. Because then it becomes about the terrorist screening database or other watch lists. And the Charhouni case from last year. See, I do want to understand your argument here. Appellant said you basically conceded everything, that she shouldn't be on any list and that she's not a terrorist and she's no danger. That's completely incorrect. Did she make all those confessions? No, Your Honor. In fact, the district court, as I just said, made a factual finding that she was on the TSBB. But you did concede that she herself is no danger at all. What we conceded was that she shouldn't have been on the no-fly list, Your Honor. No, according to the district court, or there was a finding, and I thought he says government counsel has conceded that trial and this order finds that Dr. Ibrahim is not a threat to the national security of the United States. She does not pose and has not posed a threat of committing an act of international domestic terrorism with respect to an aircraft, a threat to an airline passenger or civil aviation security or a threat of domestic terrorism. I think it's all those parts about civil aviation security and terrorism against an aircraft that is the critical language, Your Honor. A threat of domestic terrorism. Yes, but some of these other things that she's on don't relate to that. The government has many databases. So, in other words, you did not concede at trial that she is not a threat to the national security of the United States? No, Your Honor, yes, but those things don't necessarily go to the other list that she was asking to be removed from. But, you know, the only reason she brings the lawsuit is that you had her on a no-fly list. And if you'd let her fly, this lawsuit never would have existed. And when she brought the lawsuit, if you had said to her, well, we made a mistake, you may fly now, the lawsuit never would have happened. I don't think that you can assume that, Your Honor, and let me give you an example. Well, she still had her visa situation. She still had her visa situation. Well, she had a visa, you revoked it. Yes, but she was suing about that as well. She was also, was, and was, as of the final judgment, in the TSDB. And let me give you an example. The Tarhouni case that Your Honor was on the panel. The person sued under the new policy, 2015, we said, you've been removed from the no-fly list. Did the suit end? No, it did not. It became a suit about the TSDB, and this panel, the panel of this Court, remanded the case back to district court where it is still alive to this very day. The TSDB was an integral part of this case, as were the visa issues and every watch list. Can I ask just a factual question about that? Yes. I couldn't quite understand this. Do you get on the TSDB because you're nominated to the no-fly list or the other way around? It's basically the other way around. I mean, that's sort of a very rough way of putting it, but the TSDB is sort of like, you might think of it as sort of a warehouse that then ports information out to various other lists, including the no-fly list. But that's not what the story is told with regard to what Kelly did here. Apparently he nominated her erroneously to the no-fly list because he meant to nominate her to some other list, but that was all because she was already in a TDSB? No, I think once you're on those other things, you're going to automatically be in the TSDB. There's a lot of sort of interlocking. Well, either way is essentially what you're saying. Yes, but his mistake, and it was a human error, and we conceded that, but it was a mistake nonetheless. You didn't concede it until the trial. That's the problem here, right? You didn't come in at the beginning and say this was a mistake, somebody filled out the form wrong. You didn't do that until the trial. That's correct. Right? So we had seven years of litigation before that came out. Well, we did actually disclose it to plaintiff's counsel before the trial. When did you first disclose it? When did the government first say that error was made? My understanding is it was disclosed under seal to plaintiff's counsel in I believe it was February or March of 2013. After seven years of litigation. Yes, and our policy at that time was a Glomar position. We neither confirm nor deny, and we defended that policy. We did not win, but we defended it in good faith. Well, it's good faith unless you look at our Mendenhall case. I mean, I'm puzzled as to how you believe, even taking the Glomar approach, that with Mendenhall versus National Transportation Safety Board, knowing that there was no problem with this woman as far as national security was concerned, there was no reasonable suspicion, I understand that to be in the record, that you're not stuck basically with the idea that going forward with that in mind is bad faith. Your Honor, I'm a little bit at a loss to understand what the bad faith is there. That's what that case says. That's what the Mendenhall case says. But the question is whether what we did here was in bad faith. And what we did is we had a Glomar policy of neither confirming or denying whether someone's on the list. But the case says, and I'm simplifying this here, that when the government knows that its factual predicate is dead wrong and it proceeds as if it were right and just punishes the person to protect for whatever, that's bad faith for purposes of this Act and the attorney fees. But we weren't doing it to punish anyone. Well, what were you doing it for then? Well, let me tell you. Let me be sure you understand the question. Okay. What troubles me here is that you seem to be saying, okay, yeah, we knew roughly 2006 after the complaint was filed that she shouldn't have been on this list. Now, it got bounced back and forth later on, but you knew then that she wasn't supposed to be on the list. And you have a reason within the Department why when somebody does certain things in litigation how you're going to react. My reading is that the visa problem occurred because it was part of a litigation response. You did other things because she wanted to take depositions and so on and so on. But that's beside the point. When you knew that she shouldn't have been on any list and there was no reasonable suspicion, again, I get back to the point under Mendenhall. I don't see how you can get away from the fact that under that case law it's bad faith to proceed from there. Do you disagree with that? Well, yes, Your Honor. There are a couple. First of all, I think the premise of your question is not correct. Okay. You said we proceeded without removing her from the list. We did remove her from the no-fly list before this litigation even commenced. Did you tell her? But you didn't tell us. But we didn't. So the question is — And you didn't even suggest would you try to take a flight and see if you're on the list? You know what, Your Honor? She came in. She was barred from flying. Her own complaint said we told her that she was not on the no-fly list, and she was taken off, and she flew the next day. She flew the next day. But she wasn't off. Then she was put back on. Was she not? No. No, Your Honor. Never put back on?  The first time she was taken off? No. There wasn't a lot of flight? No. There wasn't a lot of flight? One day she went to the airport. This was in early January of 2005. Sorry. Is she now — This is Dr. Ibrahim. Okay. Dr. Ibrahim went to the San Francisco airport to fly to Malaysia in January 2005. She was prohibited from boarding and told that she was on the no-fly list. Right. After a short delay, her own complaint says the FBI agent came, said she was not on the no-fly list, and the next day she completed her flight via Hawaii to Malaysia. Since that time, she has never been on the no-fly list during the entire course of the litigation. You told her about that. You verified. I'll say that. We have now. Yes, Your Honor. And you verified it. You just gave us the date. Yes. January 2, 2005. At the end of this litigation, the district court required us to give to the plaintiff and to the court a certification from the FBI saying what her status was, which said that from January 2, 2005 until the present day of final judgment in 2014, she was not on the no-fly list. So what was the subject of this letter that she got, which said we can't tell you? It said essentially something to the effect of we've checked, and if you're on the list, you're where you're supposed to be. I agree. It's a confusingly worded, not very helpful letter. I agree. That's the result of what was then the Glomar policy, the neither confirm nor deny policy. But you're telling us you already told her she was off the list, but you didn't tell her. How can you defend a policy of not telling her whether she's on the list if you think you say you already told her she's not on the list? Well, this is just the allegations in her complaint, Your Honor. They're not established facts in the case. And then we go and litigate the case, and the question was, which we defended in good faith, was does the due process clause require notice to Dr. Ibrahim of her no-fly list status? Now, we lost that. We lost that at trial. But we defended it in good faith. Let me ask you a question just in terms of you didn't cross appeal here. So what you asked at the end is just to affirm the district court. Is that correct? That's right. We did not cross petition for rehearing on bond. That's right. All right. So what you're asking here is just affirm the district court. Right. Well, yes. But what about let's say this court said that the district court erred in terms of parsing everything out and looking at the substantial justification and that it had to go back to the district court. Would you then argue to the district court that you were substantially justified overall and go for zero attorney fees? I would say this, Your Honor. We did not appeal originally even to the panel on substantial justification. We have already paid the nearly half a million dollars that the district court ordered. We've already paid that money. So I would think it would be very odd for us to then attempt to go back and relitigate that. Are you defending the district court's approach to the substantial justification question? I would say this, Your Honor. I don't read the district court as taking a piecemeal approach in the way that it was. Well, of course it didn't. It backed out, for example, all the privilege issues, which came along the way. And it said overall in the privilege issue she wasn't substantially justified. But I would like to hear why you don't read that as part piecemeal. Sure. And I understand. And Judge Berzin, I agree with you that I think. I understand her position, but I want to hear what your position is. Sure. Okay. So I think that what the district court was doing, and it wasn't, I admit, it's not as clear as it could be, but Judge Alsop, I think, was trying to do his best in this opinion. In a section called substantial justification, he analyzes not only substantial justification, but also the question of relatedness of the claims, as well as the question we were getting to earlier about whether the limited results relief in the case justified reduced fees. And in that opinion, although he says this issue is not justified, this issue is, I think what Judge Alsop was doing is similar to what the Third Circuit in Hanover-Potato said that you can do, which is when you make your one overall determination, you, of course, need to go issue by issue, because how else are you going to do it? You would say the district court impliedly found that there was not overall justification. I think so. And then looked at all of those in deciding doing the Hensley analysis? Yes. I think that those issue by issues really went to the Hensley analysis, both the relatedness question and the limited overall success. So the government is stipulating then that there was no substantial justification here? Well, we never appealed on the substantial justification. You're just saying it's off the table as far as the litigation posture is right now. Yes, Your Honor, except for this one little caveat, which is if you vacate the district court's opinion and, for example, initiated a fee change in the analysis, I think we'd have to revisit our position. But if everything stays as I think Gene strongly suggests it should, then yes, you're correct, Your Honor. We would not be re-arguing that. But then when the special master went to actually figure out the fees, she treated the issues that he said were not substantially justified as completely backed out of the analysis, even though a lot of them, as was said before, were procedural issues that were sort of stuck in the middle of the litigation. For example, standing. He said that standing up until the court of appeals decision was not substantially justified, which is a very strange position because ultimately she didn't prove to be right. And she certainly had to litigate it all the way through the court of appeals in order to prove she was right. And nonetheless, he said it wasn't substantially justified. So that was a substantial justification decision. It wasn't a decision about success. She was clearly successful on it in the end. I understand, Your Honor, but the same parts of the opinion, and this is page 410, 412, 415 of the excerpts of record. At the same time that he's talking about substantial justification, he's asking things like, quote, did plaintiff achieve a level of success on, quote, justifying those fees? Let's take the particular example I gave you, okay? Okay. It looked at in terms of success. She was clearly successful on that issue. Looked at in terms of substantial justification because Judge Alsop had found that she didn't have standing up until the time the court of appeals decided that she did. He said that you were substantially justified. Those are two distinct things. Your Honor, I definitely respect your view. I think you can read the opinion otherwise. We argue that to the panel. Is there any way to justify backing out the time spent on the standing issue? Oh, yes, Your Honor. I think all those issues you can. And the district court gets substantial discretion under the Henley problem. Well, tell me how because she clearly succeeded on it. I think that what the district court did was say, you had very limited success, so I'm going to reduce. But, counsel, just to make sure we're talking about the same thing on standing, she won twice, right? So I don't understand how you – once you get to – once the court gets to Henley and the question is whether she failed to prevail, and it starts talking then, the opinion starts talking about whether or not the government's position was substantially justified. And I think the court concludes that in the first – the first time around that the court was – sorry, the government was substantially justified, and the second time around not, and then does, as Judge Berzon indicated, splits the fees there. But when we get to failed to prevail, she, under Henley, she prevailed twice on that issue. And as a matter of fact, to add on to what my colleague just said, what more could she have gotten if she had prevailed on the First Amendment and the religious discrimination issue? She got what she wanted. They're part of the core facts. What's the problem here? What didn't she prevail on in terms of the ultimate result? Let me tell you the 13 things, claims or forms of relief in this case that she either did not prevail on or outright lost. Okay. The first is the one that I see talking about a lot. She sought removal from every single watch list in this case, every single one. The district court found that she was on the TSDB class and text. Nothing erroneous or unlawful about that. So she lost on that. She challenged her visa – Wait a second. Yes. She sought to be removed from it as a result of the 2004 fly list. And he did tell the government to go and purge anything that came out of the 2004 decision. She didn't know, obviously, in 2006 that she was on the list in 2009 because it wasn't 2009. So she couldn't have been asking to be taken off the list as a result of having put on in 2009. But she wasn't asking just for correction of the error. The district court ordered the government to correct the specific error about Agent Kelly. Did not say, and you just take her off every no-fly list or any other list regardless of whether that Agent Kelly error made a difference in that. That's not what the district court held. She sought removal, and I'd like to just read from her complaint. Which complaint is this? This is the second amended complaint. It's in volume 13 of the excerpt of the record starting at page 3299. Seeking relief for an injunction requiring defendants to remove Ibrahim's name from the no-fly list or from any other related database maintained or accessed by other federal agencies, including but not limited to, and then a bunch of agencies. And when was that filed? This was filed in 2009. So your first one on your list of 13 is she didn't get all of that. She didn't get removed from every single list. Okay, that's the first thing. What's the second thing? Okay, the second. She challenged the revocation and the denial of her visa, which the district court actually upheld. Okay. Number three. Well, it didn't uphold it. It said it didn't have jurisdiction. Excuse me? He said it didn't have jurisdiction, which she apparently did. But then he also reviewed the materials ex parte and in camera and said it justifies the government's decision. Okay. Number three. She lost on most of her state secrets, arguments, or attempts to get classified information, most privileged arguments, and hundreds, if not thousands, of objections during the election. Those are all subsidiary issues. Okay, let me evolve from the litigation. So if you have no litigation to start with, most of those things would have been irrelevant, would they not? But the litigation would have proceeded regardless of the no-fly list. I mean, on the day one, you could have approached the court, gone under seal, and disclosed the information without violating the department's policy, right? Possibly, Your Honor. Or you could have said, we have some different information. Let's go to confidential mediation. If you're concerned about disclosing it to the world. Your Honor, we attempted to do that at the second motion to dismiss phase. After remand from number two, we attempted to go to the district court and file ex parte in camera her status. The district court did not allow us to do that. Counsel, when was that? Forgive me. Can you give me even a year? The second motion to dismiss? I'm going to think maybe 2012? After the second motion to dismiss, you suggested this? No, as part of the second motion to dismiss. Okay, all right. We asked the district court to allow us to file ex parte in camera her status. Without disclosing it to her? Without disclosing it to her. See, that's my issue. Well, again, this gets to the question of, did we proceed in that way by having one more file? It's part of the problem here that her status changed over the litigation. If she would have come in at the very beginning, as I understand it, she was put back on the TSB, I understand it, in 2009. Is that right? From what we know. I'll take your word for it. So in 2006, when she filed the lawsuit, if you had just come in and said, you know, you're not on a no-file list, you're not on these lists, and that would have been it and everybody could have gone home. Again, Your Honor, that's not the way things are working out in the real world. In the Tarhouni case, we did exactly that. Can I ask a second question? Sure. Are you defending the district court's decision to back out the equal protection and First Amendment claims as part of the first level of the Hensley analysis? Yes, Your Honor. On what basis? Okay. They, both those claims, proceeded as to different legal theories and a different set of facts. How are they a different set of facts? If I allege that you did X for one of three reasons, either because you were discriminating against her or because, and I don't know what's going on in your head, right? So it's like a criminal case. You either did it intentionally, recklessly, or negligently, and then you litigate that. How is Laura not supposed to do that? Well, Your Honor, that's not how this case was litigated or how the district court viewed it. What the plaintiff did in terms of the equal protection analysis was, and I'm quoting directly from the trial brief and her proposed findings of fact and conclusion of law prior to trial, was that the equal protection was based, and I'm quoting, on discriminatory acts toward third parties. She alleged that there was a government-wide pattern or practice directed at Muslims throughout the government, throughout the country as a whole, who were discriminated against on the basis of her religion, and that was the centerpiece of her equal protection claim. And she had an expert come and testify and have a report, and Judge Alsop talked about this in his. . . And Judge Alsop specifically did not reach the question, specifically did not. Right, but what he said is all of those things about the equal protection, none of that contributed to the due process because it was all about third parties. I understand it was an alternative ground, but lawyers plead alternative grounds for this. It was an alternative ground for the same thing. So in terms of the course of conduct standard, it was certainly the same course of conduct. Why did you do this to me? Well, maybe you did it for this reason, maybe you did it for that reason. Well, the operative question, I think, under this Court's case law is whether it's a common core of facts. Exactly. And what I'm trying to explain to you, Your Honor, is that her due process question was about all these things we've been talking about here. Was she entitled to get notice of her status? Were there enough procedures to correct errors? But ultimately, it was also about how she ended up on this list. But the equal protection claim didn't talk about that. The equal protection claim was grounded largely on allegations about third parties and how you can draw an inference of discrimination from that government-wide pattern. Therefore, that's how I got on the list. Now, I'm not saying that there's not some commonality, but the question is whether they're related enough that the work in one necessarily contributes to another. The judge also reasonably found that wasn't the case here, and she's entitled to substantial deference on that question. But what he actually said was she couldn't get any different relief. That's one thing that she said, but he also said, I don't think, for example, your expert, Professor Synar, prepared a report and gave testimony that I didn't find useful at all in the procedural due process analysis. But what about the other? That is to say, in the procedural due process, I didn't find it, but you're not speaking to whether or not it was useful for the equal protection claim or the First Amendment claim, because he doesn't reach those claims. Well, he didn't reach them, but he also said, in the way that you advanced that question, I didn't find your evidence useful. Well, but then on that theory, you would have to reach the claim. Wait a minute. Sorry, I apologize. He chose to do the procedure. She gave three reasons why she shouldn't have been on this list. He chose to reach one of them. If he had reached the other one, then she might have succeeded on it, and he was very specific about the fact that it wasn't deciding that she didn't succeed on it. So how can you say that it wasn't an alternative ground, that as a lawyer trying to litigate, she had an obligation and certainly reasonably raised? I agree with that, Your Honor. Because if we rule this way, then a district judge, then the right answer should be he has to reach the issue, because why should she not get the fees for something that she could have won on, and he chose not to decide? Your Honor, Henry speaks directly to this point. That's right. He says in civil cases, alternative theories are raised, sprawling litigation, but sometimes you don't get full fees, because sometimes the work that you do on one of those claims in your sprawling litigation doesn't work. But she didn't lose. If she'd lost, it would have been one thing, but she didn't lose. So at a minimum, doesn't he have to reach the issue then? Your Honor, it doesn't matter whether you win or lose. That's not the question in relation to it. But can he come to the judge, decide which one to decide on, and then wash out the fees on the rest, even though they get to the same relief? Well, the judge, he looked at the same evidence. He's got to look at the evidence, and he did. He heard the testimony, Your Honor. But he didn't decide it. Right. Specifically didn't decide it. But he did make a factual finding that the evidence that I did hear, even though I'm not deciding the claim, I know because I heard all that testimony and read the report, that it didn't contribute to her success in the due process. Right. The Hensley test is, did she fail to prevail? Did she fail to prevail? And if so, were the issues on those issues where she failed to prevail, right, were they unrelated? Well, the question is, they can be unrelated and failed, and you can either lose or not reach it. But if they're unrelated, you don't necessarily get those questions. But your answer has to rely on unrelated. It can't rely on – that's the point Judge Berzon's making. Well, I'm actually making – that's one argument. But I also think Hensley also says, even if they are related, if you have limited overall success as the judge – Do you think he ever got to that question? I'm sorry? Did Judge Alsop ever get to that last question? Yes, yes. Where? Okay. On page 410, he asks, as part of his analysis – and again, he's pushing together substantial justification, Hensley 1 and Hensley 2. But he's asking, did the plaintiff achieve a level of success? What was that success? On page 412, he asks, what's the extent of the success? On page 415, he says, he quotes Hensley, the result is what matters. And in the opinion, he does four things that I think make it unmistakable that this is what ultimately was grounding his reduction in fees. The first thing is he refers to relief as, quote, limited six times. And then he refers to his order saying correct Judge Kelly – Agent Kelly's error as relief, quote, does nothing more than requiring those corrections and, quote, merely requires certification on the correction. And these are on page 455, both of those – 458, excuse me. But he didn't do – I mean, there is – is step back and say that given the degree of success, I'm going to, in some fashion, limit the relief. Instead, he did it at the stage of saying that these things weren't related or that they weren't substantially justified, neither of which seems very persuasive. Well, Your Honor – But he didn't say at any point what you said, and I don't know if he would, you know, well, she asked for X and she got Y. Well, he didn't go through in that kind of fashion. But I don't think that you need to require that as a district – the district court is out to get rough justice here in these EJ cases. But that's the problem. He didn't do it right. He did it very un-roughly. Let's answer the question. Your time is over, but answer that and conclude. Thank you. Do you want me to answer the question now? Well, the question is simply didn't he instead try to do something extremely precise by – and that is then reflected in the special master's way of going through this as if taking out whatever he said wasn't substantially justified and taking out whatever he said was unrelated, which is a very different approach. Well, I think that you can make that kind of claim-by-claim reduction either in the relatedness analysis or in the limited overall success analysis as well. And I think that's what I understand Judge Alsop to do. And it's the kind of judicial fact-finding that the Supreme Court in Goodyear said there's no other area of the law that has – than in attorney's fees. And I think for those reasons, Your Honor, I realize my time is up, but I think that Judge Alsop's reasonable fact-findings ought to be upheld. And they are fact-findings subject to abusive discretion and clear error review. Thank you, counsel. We have a rebuttal. Thank you. First off, I think that if you read the district court's decision, his cutting out of most of our fees is because of a substantial justification analysis. He goes through and says the government was substantially justified in arguing state secrets in a lot of its discovery battles and cuts out a lot of our fees for discovery. He goes through and says the government was substantially justified in arguing jurisdiction, arguing standing up until the second appeal and cuts out all of our fees for that. But you wouldn't get anything if he had made an overall finding that the government was substantially justified, right? Well, actually, in his decision, he made an overall finding that the government was not substantially justified both in its pre- and post-litigation conduct. Judge Howland's question is different. She's asking a different question. I'm sorry. So if Judge Alsop had found that the government was substantially justified, you get zero. That's under the HAA, yes, correct. But that's not what he had found is all I'm saying. No, I think she was suggesting that if it goes back on remand and that question is reopened, then you're faced with an alternative of fees versus nothing. That's a risk. I just want to make a few points about the government's analysis of when ultimately being limited. First of all, with respect to the 2009 placement of her name in the TSDB, that happened in October 2009. We filed our second amended complaint in March 2009 before we ever even found out about that placement. That placement, the judge specifically said that he is not reviewing that placement because there's no reviewable adverse concrete action. So that specific placement was not adjudicated in her case. The adjudication was over her 2004 placement in the government's TSDB. And you never challenged it because it hadn't happened at the time you filed your last complaint? I'm sorry? You didn't directly challenge it because you had it? Because our complaint was filed before it even happened, and it happened when she applied for a visa to come to the U.S. so that she could pursue this litigation. And the court also made it very clear that there's a basis for nominating people to the terrorist screening database under the INA that have nothing to do with the individual themselves, and was very careful to say that she has no connections to terrorism in spite of this particular nomination. The other thing the government says is that we lost on most of our privilege arguments. That's actually not true. The district court stated in its decision that we lost on the government's state secrets arguments that the overwhelming majority of the government's other privilege assertions, including its sense of security information assertions, were largely overruled. I think also if you look at the district court's decision where it talks about our relief being limited, there's two reasons for that. First of all, the district court was very careful to say that the relief that it gave us was limited to her particular case because in her case the government admitted that she had done nothing wrong. And the other thing is the reason the courts refer to it as limited is because the government kept telling the court that the problem has already been fixed, she's already been taken off the no-fly list, not acknowledging that she was still on all of these other lists, so the government and the district court thought, well, if that's the case, then all you need to do is certify that, and that's why it referred to our relief as limited. But we know now, after the government did certify that, that she actually had remained in all these other government watch lists. It was not because she did not receive the relief that she asked for. In fact, she did receive the relief that she asked for. So you need to sum up. Okay, I've summed it. One final thing, the council says that the government told Dr. Ibrahim that she was placed in the no-fly list by error in early 2013. That's actually not true. The district court's decision notes that Kevin Kelly said that he did not discover his error until his deposition in September 2013, and yet even after he said that it was all by error, he didn't mean to place her on the no-fly list. The government still continues to litigate this case, taking it through summary judgment and taking it through trial. But also, we don't know when the government, somebody else discovered it. I'm sorry? We don't know when somebody else discovered it. We don't, Your Honor, we don't. All we know is that that's when he said he discovered it, was the day before his deposition, which the government fought us on taking. Thank you, counsel. Thank you both for your arguments today. The case history will be submitted for decision and will be in recess.
judges: Thomas, McKeown, Wardlaw, W. Fletcher, Berzon, Callahan, M. Smith, N.R. Smith, Christen, Nguyen, Watford